PEOPLE v SWEJKOWSKI

Docket No. 78-2657. Submitted April 9, 1979, at Detroit.—Decided May 22, 1979.

Defendant, Mark Swejkowski, was convicted of breaking and entering with intent to commit larceny in Recorder's Court of Detroit, Susan D. Borman, J. At trial prior to closing argument, defense counsel requested the court to instruct the jury on circumstantial evidence and the court indicated that it would. Defense counsel relied on this in arguing circumstantial evidence to the jury in closing argument. The court then refused to give the instruction on the ground that the evidence presented included sufficient direct evidence so that an instruction on circumstantial evidence was not warranted. Defendant appeals. *Held:*

The refusal was fundamentally unfair to defendant, violated a court rule and requires reversal.

Reversed.

1. CRIMINAL LAW — INSTRUCTIONS TO JURY — COURT RULES — FAILURE TO INSTRUCT.

Failure of a trial judge to give an instruction on circumstantial evidence after indicating she would do so is fundamentally unfair and violates a court rule and, where the party requesting it relied on it in closing argument, requires reversal of a conviction (GCR 1963, 516.1).

2. CRIMINAL LAW — CLOSING ARGUMENT — PROSECUTORIAL COMMENT — OTHER CRIMES.

A prosecutor, in a trial for breaking and entering, in his closing argument must refrain from references to testimony during the trial regarding other possible breaking and enterings that have nothing to do with the case being tried.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,*

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial § 615.
[2] 75 Am Jur 2d, Trial §§ 251, 269.

Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

*Samuel F. Galici,* for defendant.

Before: BEASLEY, P.J. and ALLEN and D. C. RILEY, JJ.

BEASLEY, P.J. A jury found defendant guilty of breaking and entering a building with intent to commit larceny contrary to MCL 750.110; MSA 28.305. He was sentenced to a prison term of not less than two nor more than ten years in prison. Defendant's motion for a new trial was denied. He appeals as of right.

Defendant first claims that the trial judge erred in refusing to give a requested jury instruction on circumstantial evidence after the court had agreed to give that instruction.

The case against the defendant was based on circumstantial evidence. The complainant testified that she left the bar which she owned at 9:30 p.m. and that everything was in order. After going out to eat, she arrived home and found that her home had been robbed. Because of the condition of her home, she had a premonition that something might also be wrong at her bar, so she sent three men friends back to check on its condition.

One of the men, George Sanford, testified that upon entering the bar he noticed plaster on the floor. He proceeded to the rear of the bar to check the doors.

Sanford and another prosecution witness testified to hearing someone within the bar say, "Freeze!" Sanford testified that defendant identified himself. However, at a previous meeting with a police officer, Sanford did not mention this iden-

tification. Sanford and one of the other witnesses testified that the voice they heard within the bar was that of defendant. Sanford said his identification of defendant was based not only on his voice, but the figure's height, which he determined to be the same as defendant's.

The third witness testified that he had opened the bar door for the other two men. He heard a voice from within which he could not identify. Upon hearing Sanford holler, he closed the door and called the police.

Complainant returned to the bar herself sometime after midnight. She observed plaster on the floor, a hole in the roof and the door to the cigarette machine open with all the cigarettes out of it. Her testimony indicated that she knew defendant; he had been coming to her bar for six years, and she was able to identify him in court. Complainant said that defendant was in the bar the day before it was broken into and, because she would not serve him, he shook his finger at her and said: "You better watch yourself".

Defendant did not take the stand. All of the testimony referred to above came from prosecution witnesses. The prosecutor attempted to show that defendant harbored a grudge against the complainant and that this was his motive for breaking into her home and bar. None of the parties actually saw defendant's face at the time of the alleged incident.

Prior to closing arguments, defense counsel submitted various requests to charge to the trial court. In one of them, he requested that the proposed Criminal Jury Instruction 3:1:10 be given in regards to circumstantial evidence. The trial judge specifically inquired concerning the circumstantial evidence instruction and defense counsel re-

sponded that it was submitted primarily with
reference to the alleged animosity that complain-
ant, in her testimony, claimed to exist between
defendant and herself. The trial judge indicated
that she had no problems with the instructions
submitted by defense counsel and said she would
give all of them.

In defense counsel's closing argument, he told
the jury it would receive an instruction on circum-
stantial evidence from the court. He read part of
the requested instruction to the jury that he had
reason to believe would be given and argued its
applicability to the evidence.

The trial court failed to give the instruction on
circumstantial evidence even though defense coun-
sel objected to the omission.

Defendant contends that the trial court's failure
to give the instruction was fundamentally unfair
and violated GCR 1963, 516.1. Defense counsel
claims he relied on the giving of such instruction
and based his closing arguments on it.

The trial judge addressed this issue in her denial
of defendant's motion for a new trial. She would
support her failure to give the instruction she said
she would give on the basis that the evidence
presented included sufficient direct evidence in
and of itself so that an instruction on circumstan-
tial evidence was not warranted. The prosecution
further argues that sufficient reasonable doubt
instructions were given to preclude a necessity for
a special instruction on circumstantial evidence.

GCR 1963, 516.1 reads:

"At or before the close of the evidence, any party
may, or at any time the Court reasonably directs, the
parties shall, file written requests that the Court in-
struct the jury on the law as set forth in the request. A
copy of such requested instructions shall be served on

the adverse parties in accordance with Rule 107. The court shall inform counsel of its proposed action on the requests prior to their arguments to the jury, and, subject to the provision of sub-rule 516.3, shall instruct the jury after the arguments are completed. The court may make such comments on the evidence, the testimony, and the character of the witnesses as in its discretion the interests of justice require."

Defendant complied with this part of the court rule. In 2 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), Comments, p 565, it is stated:

"The court is required to inform counsel of its proposed action on the requests prior to their arguments to the jury. Sub-rule 516.1. The obvious purpose of this provision is to enable counsel to know which requests will be granted or denied, in order to argue the facts in the light of the law as the court will charge the jury."

In *People v Patskan,*[1] the trial judge stated that he would give an instruction on attempted assault with intent to rob being armed and then failed to do so. The Supreme Court, in holding this to be reversible error, stated:

"We agree with defendant that the trial judge stated he would give an instruction of attempted assault with intent to rob being armed. His failure to do so violated GCR 1963, 516.1.

"As the people point out, defendant's basic defense was that he was not a participant in the crime. However, this does not lessen the prejudice to him where the court has agreed to give a specific charge and then fails to do so. His counsel forcefully argued that if any crime was committed it was attempted assault with intent to rob being armed. The failure of the trial judge to give the instruction after indicating he would do so,

---

[1] 387 Mich 701; 199 NW2d 458 (1972).

was fundamentally unfair, violated GCR 1963, 516.1 and, also, defendant's right to due process of law. Therefore, the conviction must be reversed and a new trial held." (Footnote omitted.)[2]

The prosecution attempts to distinguish *Patskan* on the basis that the failure of the trial court to instruct in that case removed the ultimate determination of guilt or innocence of that charge from the jury's consideration and, therefore, was more prejudicial than in the instant case.

The language in *Patskan* appears to be unequivocal that where the court fails to give an instruction that it previously agreed to give, and the party requesting it relies on it in closing argument, it is reversible error.

Although there may be instances where the failure of a trial judge to give a promised instruction is harmless error, this is not one. In the instant case, where the evidence is far from overwhelming, and where the instruction related to complainant's effort to show defendant had a motive and, thus, to tie him to the crime, the failure to give the instruction was fundamentally unfair and requires reversal.

Since another issue raised by defendant might arise upon retrial, we treat it in this opinion. Defendant contends that the remarks of the prosecutor in his closing argument constituted reversible error.

During the direct examination of complainant, the following remarks were made:

"Q *[The Prosecutor]* Did there come a time when you came back to the bar?

"A *[Complainant]* I came back the next day, but * * * but that day, that I closed at nine-thirty, I went out to

---

[2] Id., pp 709-710.

eat and I got home and my home was robbed that night, too. So I had a feeling that somebody * * *.

"MR. GALICI *[Defense Counsel]:* Your Honor * * * Your Honor * * *.

"THE WITNESS: That somebody was in that bar.

"THE COURT: One minute. One minute.

"MR. GALICI: I am going to * * *.

"THE COURT: Would you address your questions specifically?

"MR. GALICI: I would also ask the Court to strike the statement that her home was robbed as well. It has nothing to do with this case.

"THE WITNESS: Well, I had a feeling that night that somebody was in the bar, too.

"THE COURT: Alright. Just a minute, just a minute, just address your questions specifically.

"MR. RESNICK: Okay.

"Q (By Mr. Resnick) Now, when you left the bar, on the fifth of October of '76, you said you went out to dinner?

"A Yes.

"Q Did you come home after dinner?

"A Yes.

"Q About what time did you arrive home?

"A About eleven o'clock.

"Q That would be eleven o'clock in the evening?

"A Yes.

"Q Did you do anything when you came home?

"A I just saw that the house was all disturbed.

"THE COURT: Wait a minute, are we talking about her home?

"MR. RESNICK: Her home.

"THE COURT: Does that have anything to do with this case?

"MR. RESNICK: No, it doesn't Your Honor.

"THE WITNESS: No. But I had a feeling.

"THE COURT: You can't testify to your feelings. Just answer his question. This case doesn't involved *[sic]* your home.

"THE WITNESS: Well, that is why I think * * *.

"MR. RESNICK: Just take it easy and just answer the questions."

In spite of this ruling by the court, during the prosecutor's rebuttal closing argument reference was made to the breaking and entering of complainant's home. This was improper; it was irrelevant to the issues in this trial and highly prejudicial to defendant. On retrial, the prosecutor must refrain from such references.

Reversed.